

# Missouri Court of Appeals

## Southern District

### Division One

IN RE THE NAME CHANGE OF )
E.C.D. )
)
KRISTIN DAWN MASTERS, )
) No. SD37042
Movant-Appellant, ) Filed: August 18, 2021
)
vs. )
)
CULLEN BRENT DACE, )
)
Respondent-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

Honorable Bradley D. Jarrell, Judge

**<u>AFFIRMED</u>**

Kristin Dawn Masters ("Mother") appeals the trial court's dismissal of her "Petition for Change of Name." In two points, Mother argues that: (1) the trial court erred in determining that it lacked jurisdiction because E.C.D. (the "Child") resides in Stoddard County, Missouri, for purposes of section 527.270;[1] and (2) the trial court erred in determining it did not have jurisdiction

---

[1] All references to statutes are to RSMo 2016, unless otherwise indicated.

in that "although the Circuit Court of Williamson County, Illinois, may have jurisdiction of the subject matter of the custody of [the Child] based upon the Uniform Child Custody Jurisdiction and Enforcement Act ('UCCJEA'), the UCCJEA does not give that Court any authority over the subject matter of her change of name." Finding no merit to either of Mother's points, we deny the same and affirm the judgment of the trial court.

## Factual and Procedural Background

The Child was born in Williamson County, Illinois, in 2010, to Mother and Cullen B. Dace ("Father"), who were never married. The Child's last name listed on her birth certificate is her Father's.

In late 2015, or early 2016, an action was commenced in the Circuit Court of Williamson County, Illinois ("Illinois Court"), Case No. 14-F-124, to establish paternity, custody and visitation for the Child.[2] The Child was five years old at the time. On March 23, 2016, the Illinois Court entered its "Final Parenting Plan and Judgment." Therein, the court awarded primary custodial and parenting responsibilities to Father, finding in relevant part:

• "That the Court has jurisdiction of the subject matter hereto and the parties in this cause."

• "The Court does find that there are stability issues with [Mother]. Based on the testimony of [Mother], the Court does not believe that she connects her actions with her testimony. While [Mother] loves the minor child, she does not provide the minor child with stability."

• "The Court finds that the child does need stability and is one of the main reasons for the Court's decision. [Father] is the party more likely to provide stability."

• "Based on the testimony presented to the Court, the Court finds that [Father] was more credible in his willingness to work with [Mother]. Furthermore, the Court found his

---

[2] The record of the Illinois case was not filed with this Court as part of the record on appeal. Other than directing this Court to the March 23, 2016 Final Parenting Plan and Judgment, both parties' statement of facts are bereft of any history leading up to Mother filing a petition to change the Child's last name in Stoddard County, Missouri, which is the subject of this appeal. We observe that Mother requested the trial court here take judicial notice of the "Findings Of Fact And Conclusions Of Law And Judgment Of Disposition entered by the Circuit Court of Stoddard County, Missouri, Juvenile Division, in Case Number 19SD-JU00172." We freely borrow from that record, as well as documents from the Illinois case contained therein, as relevant here.

2

testimony regarding wanting to have a relationship with the minor child and [Mother] in the event he was not granted custody to be credible."

•"[T]he Court finds that it is in the best interest of the minor child that [Father] be allocated the decision-making in this case. Specifically, [Father] will have decision-making regarding education, healthcare, religious training and extra-curricular activities."

•"[Father] is the stronger of the two parents when it comes to caretaking. [Mother] has also been important but does not provide the stability that [Father] has provided."

•"[T]he child is more stable in [Father]'s care."

•"[Father] is the more mentally stable of the two [parents]."

•"[Father's] stability . . . resulted in his stronger standing regarding his . . . willingness and ability" to "place the needs of the child ahead of his . . . own needs. . . . [Mother's] lifestyle, moving around and uprooting the children did not support her position."

•"[Mother] having moved several times, away from both fathers, and her claim that her current boyfriend stayed two to four nights a week did not portray a stable situation."

•"[Father] will have the minor child during the week, [Mother] will have the child every other weekend and on a holiday schedule."

•"The Court, in finding that [Father] be awarded the majority of parental responsibilities and parenting time, hopes that [Mother] is able to increase her parenting time in the event that she becomes more stable."

•"The findings were supported in part by the lack of credibility in the testimony of [Mother]."

•"Counseling, psychological or psychiatric services shall not be engaged or secured for the minor child absent the decision of [Father]. Similarly, medications/pharmaceuticals /therapy/counseling/mental health treatment shall not be provided to the child absent the decision of [Father], except in the case of an emergency."

•"[Father] is designated as the parent with the majority of the parenting time with the minor child for purposes of 750 ILCS 5/606.10. [Father] shall have parenting time with the minor child at all times not specifically designated as [Mother]'s parenting time."

•"If either party travels outside the State of Illinois, or the minor child is away from [Father]'s residence, the travelling party **shall** notify the other party of their destination if they intend to stay overnight, the name and address of the location the child will be staying. [Mother] shall not, for any reason, remove the minor child from the state of Illinois without **prior notice** to [Father]."

3

•"The parties acknowledge that the minor child's surname is Dace and no other surname or hyphenated name shall be used either formally or informally in private or public school or any other records, appointments or reservations."

•"A parent seeking modification of the terms of this Parenting Plan shall be required first to submit the rationale for the modification in writing to the other parent along with a proposed modification of this Parenting Plan. In the event the parents cannot agree upon a requested modification to this Parenting plan, the parents shall participate in mediation of the proposed modification as hereinafter provided. Should mediation fail, either or both parties may seek appropriate relief from the Court as provided for in 750 ILCS 5/610.5, or such other relief as might be available to a parent."

•"The parents shall periodically review the terms of this Parenting Plan either in person, by telephone, or by exchange of correspondence. If any changes are made to the agreement as a result of such review, or as a result of mediation as set forth below, such changes in the agreement shall be reduced to writing signed by both parents and approved by the court. Absent the court's approval of changes to the Parenting Plan, any oral agreement between the parents that substantively modifies this Parenting Plan shall be unenforceable and void."

(Emphasis in original). Mother was ordered to pay child support to Father in the amount of $253.00 per month.

Mother appealed the 2016 Illinois Judgment, which was affirmed as to parenting responsibilities, but was remanded by the Illinois Appellate Court, Fifth District to the Williamson County Circuit Court, to reconsider Mother's parenting time schedule that had been scheduled to correspond to Mother's second child.

An evidentiary hearing was held, and on November 27, 2018, the Illinois Court entered an "Order Resolving Petition to Modify and Remanded Directions." The court found that the testimony of Mother and her then-current husband was not credible. After an in-camera interview with the Child, the court found her to be a "remarkable young child," who was clearly bonded with both parents, and was "thriving in her current setting."

The Illinois Court's order also found that Mother did not provide the stability that the Child needed in light of her pending divorce and uncertainty as to her residence; that Mother was

4

attempting to create a narrative over a large period of time that would cast Father in an unjustified, unfavorable light; that rather than work with Father, Mother was attempting to create a body of evidence to cause a change of custody; that despite this, Father provided opportunities for the Child to see Mother in excess of what was previously ordered; that it was in the best interest of the Child to maximize her time with Mother and her sibling; and adopted Father's proposed parenting plan. The Illinois Court then denied Mother's Amended Petition to Modify.

Sometime in July or August 2019, at the conclusion of a scheduled visitation with the Child at Mother's home in Stoddard County, Missouri, Mother elected not to return the Child to Father in Illinois. Instead, on August 2, 2019, Mother filed a *pro se*, *ex parte* petition for emergency order of protection in the Circuit Court of Williamson County, Illinois, Case No. 14-F-124, alleging mistreatment of the Child by Father. The Illinois Court temporarily granted the order.

On August 7, 2019, the Illinois Court held a rehearing on the August 2 emergency protective order and after a lengthy hearing, vacated the emergency order, and set a plenary hearing for August 21, 2019.

Also on August 7, 2019, the Missouri Department of Social Services, Children's Division ("Missouri Children's Division") received a report alleging misconduct by Father toward the Child.

On the morning of August 8, 2019, Father filed for an emergency order of protection in Williamson County, Illinois, Case No. 14-F-124, and a hearing was held that afternoon. Mother testified she had "new information," about misconduct by Father and that was the reason she did not return the Child to Father; Mother would not provide specifics to the court or Father's attorney. She stated that she had been at the Stoddard County courthouse that morning seeking a protection

5

order as well. The Illinois Court consolidated both cases and scheduled a hearing on August 14, 2019.

On August 9, 2019, the Illinois Court had an in-camera interview with the Child, and afterwards, Mother filed a second petition for emergency order of protection in Case No. 14-F-124. Mother appeared, with her attorney, on August 12, 2019, for an *ex parte* hearing on her August 9, 2019 petition, but the court denied the emergency order of protection and set a plenary hearing for August 14, 2019.

On August 14, 2019, the Illinois Court held a plenary hearing on the three consolidated petitions for emergency protective order. The court denied Mother's request for emergency order of protection due to Mother's refusal to provide the bases of the "new information" to opposing counsel or the court, the fact that Mother immediately filed a second petition after the court's in-camera interview of the Child, and attempted to have an *ex parte* hearing to "intentionally and deliberately attempt[] to circumvent notice requirements to [Father]." The court sustained Father's petition and entered an Order of Protection granting Father the physical care and possession of the Child. Mother was ordered to return the Child to Father and ordered not to remove the Child from Father's care in the future. The court ordered limited supervised visitation to Mother.

On the evening of August 14, 2019, a juvenile officer filed a petition in the Circuit Court of Stoddard County, Juvenile Division ("Stoddard County Juvenile Court"), requesting the Child be placed in emergency protective custody due to allegations of misconduct by Father toward the Child. The Child was taken into protective custody and placed in foster care.

On August 23, 2019, Mother filed a "Petition for Modification of Allocation" in the Circuit Court of Williamson County, Illinois, Case No. 14-F-124, asserting that a substantial change of circumstances had occurred since the Illinois Court's November 27, 2018 order. Mother asserted

6

that the substantial change of circumstances resulted from Father's lack of proper care of the Child, and Father's abuse of the Child.

Also, on August 23, 2019, the Stoddard County Juvenile Court entered an amended order of protection asserting that the Juvenile Court was in contact with the state of Illinois, had received documentation from pending litigation there, and that allegations of mistreatment by Father had not been fully investigated, addressed or resolved. The Child remained in the custody of the Missouri Children's Division and remained in foster care.

Again, on August 23, 2019, Father filed in the Circuit Court of Williamson County, Illinois, Case No. 14-F-124, a "Petition to Modify Allocation Judgment and Parenting Plan" to terminate Mother's parenting time due to Mother's filing multiple falsified pleadings based on "lies" Mother has coerced from the Child.

On October 2, 2019, Father filed in the Stoddard County Juvenile Court case a "Motion to Transfer" custody of the Child to the Illinois Child Division, pursuant to a "Shelter Care and Temporary Custody Hearing Order" entered by the Illinois Court on September 17, 2019, and a body attachment order to facilitate the safe transfer of custody of the Child to Father.

October 8, 2019, Mother filed a "Motion for Placement" in the Stoddard County Juvenile Court arguing the Child should be placed with her.

On October 11, 2019, the Stoddard County Juvenile Office filed a "Motion to Dismiss" Father's Motion to Transfer because the Illinois Court on October 4, 2019, stayed its proceedings pending resolution of a temporary emergency hearing in Missouri, as Missouri was further along in its investigation.

On October 17, 2019, the Stoddard County Juvenile Court entered "Findings of Fact and Conclusions of Law and Judgment and Order Assuming Jurisdiction," stating that Father was

willing to consent to that court exercising jurisdiction over the Child, but without admitting to any abuse allegations pled against him. Father stipulated to the allegation that the Child was in need of mental health services that the parent, guardian, or custodian was unable to afford or access. The court found clear and convincing evidence that sufficient facts were admitted and established that required the court to act and the Stoddard County Juvenile Court assumed jurisdiction over the Child. The Child was to remain in the legal care and custody of the Missouri Children's Division. The parties also indicated that there was a possibility that the parties could arrive at an amicable settlement in the Illinois proceedings.

On October 22, 2019, the Stoddard County Juvenile Court ordered the temporary legal care and custody of the Child be placed with Mother and her current husband on a trial home visit.

On December 30, 2019, the Stoddard County Juvenile Court held a dispositional hearing finding that the legal care, custody and control of the Child should remain with the Missouri Children's Division, and it was not in the best interest of the Child to return to the legal care and control of Mother or Father. The Child was again temporarily placed with Mother and a treatment plan implemented.

At a team meeting on May 15, 2020, Father's attorney advised the Stoddard County Juvenile Court that a settlement offer had been extended to Mother for the Child to remain in the custody of Mother, with Father to have visitation.

On May 19, 2020, counsel for the Missouri Children's Division wrote the Stoddard County Juvenile Office recommending that a motion for termination of jurisdiction be filed based on ongoing settlement negotiations between the parties in the Illinois case. On June 5, 2020, a motion to terminate the Stoddard County Juvenile Court jurisdiction was filed, pursuant to the recommendation of the Missouri Children's Division. Mother filed an objection stating:

That it is in the best interest of the minor child for this Court to not terminate jurisdiction until a final, undisputed judgment of custody is entered in the State of Illinois as previously ordered by the Court in its Amended Judgment Of Court Exercising Temporary emergency Jurisdiction Under Section 452.755 RSMO.

The Stoddard County Juvenile Court sustained the motion and ordered as follows:

This Court originally took emergency temporary jurisdiction of the minor child pursuant to Section 452.755 RSMo. The state of Illinois is the home state of the child and there is currently an active child custody case in the state of Illinois according to the documentation provided by the mother's attorney Robin Northern, bearing Williamson County, Illinois, Case No. 14-F-124.

The Court after considering the request of the Missouri Children's Division by its letter from attorney Jason Scherer, the recommendation of the guardian ad litem and the information provided by mother's attorney indicating that there is an active child custody proceeding in the state of Illinois, finds that this court's temporary jurisdiction over the child should be terminated and the child returned to the custody of [Mother].

In June 2020, the parties entered into an oral agreement whereby the Child was to reside with Mother in Missouri, pending the outcome of the Illinois proceedings.

On August 24, 2020, Mother filed in the Circuit Court of Stoddard County a "Petition for Change of Name" as next friend of the Child. In her petition, Mother asserted that the Child was a resident of Stoddard County, and that the Child wished to have the same surname as Mother due in part to alleged "incidents of past abuse" by Father.[3]

Thereafter, Father filed an Answer to Mother's petition asserting that the Child was not a resident of Stoddard County, Missouri, but rather a resident of the state of Illinois, pursuant to the 2016 Illinois Judgment, and that the Illinois Court, had exclusive jurisdiction over of all matters regarding custody of the Child pursuant to the motion to modify the 2016 Illinois Judgment currently pending there.

---

[3] At the time of filing of the petition for name change, the Child was living with Mother, stepfather, a half sibling and a step sibling, all with the last name of Masters.

9

On January 12, 2021, the trial court conducted a counsel status hearing, and the case was reset to February 26, 2021, to allow the parties to file briefs.

On January 29, 2021, Mother filed her "Memorandum of Law" arguing that the Child had lived continuously with her in Stoddard County, Missouri, since the summer of 2019. Mother stated that the Child became upset and distraught at the use of her current last name due to alleged misconduct against the Child by Father. Mother requested the trial court take judicial notice of:

> Findings Of Fact And Conclusions Of Law And Judgment Of Disposition entered by the Circuit Court of Stoddard County, Missouri, Juvenile Division, in Case Number 19SD-JU00172 on or about December 30, 2019, in which the Court sets forth the findings it made by clear and convincing evidence from the credible disclosures and statements made by the child of numerous incidents of abuse to the child by the natural father. The natural mother in no way is bringing this action for an improper purpose and is only bringing it for the best interest of her minor child.

On February 2, 2021, Father filed his "Memorandum of Law" arguing that he had sole custody of the Child, pursuant to the 2016 Illinois Judgment, that no other orders had been entered changing the custody of the Child other than a verbal agreement that the Child could remain temporarily with Mother during the pendency of the Illinois proceedings, and the Stoddard County Circuit Court lacked jurisdiction to change the Child's name.

On February 8, 2021, the trial court entered its "Judgment/Order" finding:

> NOW, on this date the Court takes up for consideration the memorandums of law regarding whether or not this Court has jurisdiction to take up the Petition for Change of Name filed by Kristen Dawn Masters on behalf of the minor child []. The Court takes notice that there is an active modification case pending in Williamson County, Illinois which will ultimately determine the residence of the minor child. This Court also takes notice that there is a previous judgment in Illinois, which until changed by the pending modification, simply cannot be ignored. For that reason, this Court cannot exercise jurisdiction in this matter at this time. Therefore, the Petition for Change of Name is dismissed for lack of jurisdiction. Any funds on deposit for GAL fees are to be returned to the parties. All further claims for relief are hereby denied.

This appeal followed.

10

In two points on appeal, Mother argues that: (1) the trial court erred in dismissing her petition to change the Child's name in that the Child is a resident of Missouri for purposes of section 527.270, and (2) the trial court erred in finding that it lacked jurisdiction in that "although the Circuit Court of Williamson County, Illinois, may have jurisdiction over the subject matter of the custody of the minor child based upon the Uniform Child Custody Jurisdiction and Enforcement Act ('UCCJEA'), the UCCJEA does not give that Court any authority over the subject matter of her change of name."

## Standard of Review

Whether a court has statutory authority to grant the relief sought in a particular matter is a question of law that we review *de novo*. **Grega v. Grega**, 524 S.W.3d 150, 153 (Mo.App. E.D. 2017).[4]

## Analysis

### *Point I: The Child's Residency*

In Mother's first point, she argues that the trial court erred in finding that it lacked jurisdiction to hear Mother's claim for name change for the Child because the Child "actually lives and dwells in Stoddard County, Missouri, and is therefore a resident of Stoddard County, Missouri, for purposes of Mo.Rev.Stat. §527.270 (2021)."

The trial court dismissed Mother's request for name change, in relevant part finding:

> The Court takes notice that there is an active modification case pending in
> Williamson County, Illinois which will ultimately determine the residence of the

---

[4] Although the trial court used the term "jurisdiction" in its judgment, and Mother utilizes the same term in her points relied on and argument section, our Supreme Court's decision in **J.C.W. ex rel. Webb v. Wyciskalla**, 275 S.W.3d 249 (Mo. banc 2009), makes clear that Missouri circuit courts have subject matter jurisdiction over all cases and matters. Therefore, we curatively interpret Mother's challenge to the trial court's jurisdiction as one instead relating to the trial court's statutory authority over this particular case. *See* **Blanchette v. Blanchette**, 476 S.W.3d 273, 279 (Mo. banc 2015) ("[I]n light of *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), Missouri courts interpret the UCCJEA jurisdictional provisions to dictate whether a Missouri court has the statutory authority to grant relief in a particular matter, not whether a Missouri court has subject matter jurisdiction.").

11

minor child. This Court also takes notice that there is a previous judgment in Illinois, which until changed by the pending modification, simply cannot be ignored. For that reason, this Court cannot exercise jurisdiction in this matter at this time.

As relevant here, the 2016 Illinois Judgment to which the trial court refers found:

•"The parties acknowledge that the minor child's surname is Dace and no other surname or hyphenated name shall be used either formally or informally in private or public school or any other records, appointments or reservations."

•"The parents shall periodically review the terms of this Parenting Plan either in person, by telephone, or by exchange of correspondence. If any changes are made to the agreement as a result of such review, or as a result of mediation as set forth below, such changes in the agreement shall be reduced to writing signed by both parents and approved by the court. Absent the court's approval of such changes to the Parenting Plan, any oral agreement between the parents that substantively modifies this Parenting Plan shall be unenforceable and void."

Mother points to nothing in the record indicating that there was any such agreement approved by the Illinois Court to change the Child's name. Moreover, as the trial court appropriately pointed out, there is pending litigation in Illinois to modify the parenting plan. Mother directs us to no authority indicating that a Missouri court should treat Mother's attempt to initiate a name change for the Child where there is a standing Illinois judgment on the same subject matter, and pending custody modification litigation in Illinois that could potentially impact the instant name change litigation. Simply put, Mother does not demonstrate that she had the authority to apply for a name change for the Child under the circumstances here presented. Point I is accordingly denied.

### Point II: Authority to Hear Claim for Name Change per UCCJEA

In Mother's second point, she argues that the trial court erred in determining that it lacked jurisdiction to hear Mother's claim for a name change for the Child in that "although the Circuit Court of Williamson County, Illinois, may have jurisdiction over the subject matter of the custody of the minor child based upon the Uniform Child Custody Jurisdiction and Enforcement Act

12

('UCCJEA'), the UCCJEA does not give that Court any authority over the subject matter of her change of name."

Mother makes no effort to account for the fact that the Illinois Court made an explicit finding as to the Child's last name: "The parties acknowledge that the minor child's surname is Dace and no other surname or hyphenated name shall be used either formally or informally in private or public school or any other records, appointments or reservations." Mother did not challenge the Illinois Court's authority over the Child's last name at that time, and was explicitly barred from utilizing any last name for the Child other than Dace. Mother cites no authority that permits what she was attempting in the trial court.

Point II is denied. The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - CONCURS

JACK A.L. GOODMAN, J. – CONCURS

13